BODENHEIMER, Appellant, vs. CHICAGO & NORTHWESTERN
RAILWAY COMPANY, Respondent.

*October 28—November 12, 1909.*

*Railroads: Killing of horse on track: Evidence: Instructions invad-
ing province of jury.*

1. Upon the evidence in an action for the value of a horse killed on
   defendant's track it is *held* that the trial court properly refused
   to direct a verdict for defendant.
2. The evidence being conflicting as to whether the horse was killed
   at a highway crossing or north thereof on defendant's track be-
   yond a cattle-guard alleged to have been defective, a charge to
   the jury laying stress upon the strength of the testimony of the
   engineer of the train, who testified for defendant, and upon the
   weakness of the plaintiff's evidence, stating in effect that the
   engineer was either telling the truth or wilfully lying, and in-
   timating that he was telling the truth, is *held* prejudicially er-
   roneous as being argumentative and invading the province of
   the jury.
3. Further instructions, as to the testimony of the engineer, that
   there was nothing improbable in his story and nothing to sug-
   gest why it would be more favorable to him to have the horse
   struck at one place than another, that there was nothing to
   impeach him unless certain tracks seen by a witness for plaint-
   iff were actually tracks made by this horse, and that the jury
   must endeavor to reconcile other testimony with that of the
   engineer, are *held* erroneous and prejudicial because precluding
   the jury from considering, in weighing the engineer's testimony,
   his employment by the defendant, his appearance and demeanor,
   the probability of his story, and other proper tests.
4. A charge that the testimony of a witness was of a negative char-
   acter and not entitled to the same weight as that of another
   witness was erroneous, both because the testimony of the first
   witness, though negative in form, was positive in fact, and be-
   cause the jury might well be of the opinion that the witnesses
   were not equally credible.

APPEAL from a judgment of the circuit court for Brown
county: S. D. HASTINGS, Circuit Judge. *Reversed.*

This is an action brought to recover the value of a horse
killed by one of defendant's trains through the alleged negli-

gence of the defendant in not maintaining a suitable cattle-guard on the northeasterly side of its right of way where a highway crossed the same. The questions involved were whether the horse was struck north of the cattle-guard or on the public highway, and whether any want of ordinary care on the part of the plaintiff contributed proximately to the loss of the horse. The jury found that there was no contributory negligence on the part of the plaintiff and that the horse was not struck north of the cattle-guard. The evidence was conflicting as to whether or not the horse was struck north of the cattle-guard, there being evidence that he was struck on the highway south of the cattle-guard and also evidence tending to show that he was struck about fifty feet north of the cattle-guard. One witness testified that he saw tracks where the horse had walked through a ditch from the pasture from which he escaped, and saw where the horse turned and crossed the cattle-guard, and also tracks from the cattle-guard north on the right of way about fifty or sixty feet, and saw no tracks beyond this; also found hair and a piece of bone between the place where he found the last tracks and where the horse lay; that the tracks appeared to be fresh horse tracks, and such distance apart as to indicate that the horse was walking from a point near the cattle-guard northerly. The engineer on the train testified that the engine struck the horse on the highway crossing south of the cattle-guard, and that at the time the train was moving at a speed of from fifty to sixty miles an hour; that there was a curve in the track as it approached the crossing, and that with the train going north he was on the inside of the curve as he approached the crossing, and that he would have to be at least 500 or 600 feet south of the crossing before he could see the west rail of the track at the highway, and that the horse approached from the west and came onto the crossing and turned north, and about the time it turned north it was struck; that he practically struck the horse when he saw it, being within 100 feet of the crossing when he first.

saw the horse; that the curve south of the crossing was about 800 feet from the crossing, and that at sixty miles an hour the train would travel from the curve to the crossing in one or two seconds. Another witness, who was working on the track about 2,400 feet north of the crossing, testified that he saw the train as it approached, but saw no horse at the crossing nor north of it. Another witness, who was on a load of hay east of the track a little over a block from the highway crossing with nothing to obstruct the view, testified that she saw the train pass over the crossing and no horse was struck there, and that if there had been she would have seen it, and that her view north of the cattle-guard was obstructed by bushes along the right of way. The court overruled a motion by defendant for a directed verdict.

Plaintiff duly excepted to the following portion of the charge:

"Now there is but one witness who has testified who says he positively knows what the fact is, and that is Mr. Kittel. The circumstances were such as detailed by him as to show that he could not be mistaken. He testifies positively to a fact which he must have in his own knowledge, and he is either telling the truth or he is wilfully telling a falsehood. There is nothing improbable in his story. There is no chance for his being mistaken, and nothing to suggest any motive on his part for falsifying in reference to it—that is, there is nothing in the situation or his connection with the accident which would suggest any reason why it would be more favorable to him to have the horse struck one place or the other. Is he wilfully lying when he says he struck the horse on the highway? Now, as I said, there is no testimony from any witness who claims to know positively where the horse was struck, except Mr. Kittel. The plaintiff relies upon circumstances, and those circumstances are the alleged finding of tracks north of the cattle-guard which were the tracks made by this horse. Now, in considering the testimony in reference to those tracks, you have two things to consider, and the first is: Are the witnesses who testify telling the truth? They may be telling the truth, not intending to falsify as to anything,

but they may be mistaken. And the next question you have to consider—Are they mistaken? Is what they saw, assuming that they are telling the truth, shown to be tracks made by this horse, or are they mistaken in reference to what they saw, in their supposition—conclusion—that those tracks were made by this horse? Unless you are satisfied that they are honest, what they saw were tracks made by this horse, or a horse, while he was walking or running, then there is no conflict of testimony in this case at all. There is nothing to impeach or overcome the testimony of Mr. Kittel unless what they saw were actually tracks made by this horse. Drop that out of the case and there is no evidence in this case tending to show that the horse was not struck just as Mr. Kittel testifies that it was. Now, you will consider whether if that horse came onto the track as Mr. Kittel testified it did, whether it could not have done so without her seeing it, even if she had been looking right at the train all the time; and then her testimony is of a negative character, which is not entitled to the same weight as positive testimony. She simply says that she didn't see the horse. She saw the train, but she didn't see the horse. That may be perfectly consistent with the truth of Mr. Kittel's statement that the horse came on the track and was killed just as he said. And the testimony of the sectionman is of a negative character. He doesn't say that there wasn't any horse on the track. It is conceded by everybody there was a horse on the track somewheres, and that he might have seen it by looking. He didn't see it. The only argument that can be made from that is that if the horse had been on the track, walking north of the highway, he would have been much more apt to have seen it than he would have been had it come onto the track as Mr. Kittel testified it did."

Motions were made by plaintiff to amend the verdict and for a new trial, which were denied and due exception taken, and judgment was rendered in favor of the defendant, from which this appeal was taken.

For the appellant there was a brief by *Sheridan & Evans,* and oral argument by *P. Sheridan.*

For the respondent the cause was submitted on the brief of *William G. Wheeler.*

KERWIN, J.  The appellant claims that the judgment should be reversed for error in the charge. We have set out in the statement of facts the portion of the charge excepted to and need not recite it here. The main contention of the respondent is that, regardless of any alleged errors in the charge, the judgment should be affirmed, because the court should have directed a verdict for the defendant at the close of the evidence; therefore the plaintiff was not prejudiced by any subsequent error. This, of course, involves the question whether the evidence was such as to warrant the court in directing a verdict for defendant. We cannot agree with counsel for respondent that a verdict should have been directed. There was ample evidence to support a verdict for plaintiff. We have referred to the evidence briefly in the statement of facts and need not repeat it here.

We therefore come to the question whether the case was fairly submitted to the jury without prejudicial error. The vital question for determination by the jury was whether the horse was killed north of the cattle-guard. Upon this question there was a sharp conflict in the evidence, and, in view of its character, it was of the utmost importance that the issue be fairly presented to the jury. We think the charge was well calculated to impress the jury with the idea that they should find that the horse was killed on the highway crossing and not north of the cattle-guard. The great stress placed by the court upon the strength of the evidence of defendant's witness Kittel and the weakness of the evidence of plaintiff's witnesses was strikingly set forth in the charge. The court told the jury in effect that Kittel either wilfully swore falsely or was telling the truth, and used other language intimating that he was telling the truth, and thus invaded the province of the jury, who were charged with the duty of passing upon the credibility of the evidence. This portion of the charge was prejudicial error on the ground that it was argumentative and invaded the province of the jury. *Dingman v. State,*

48 Wis. 485, 4 N. W. 668; *Conway v. Mitchell,* 97 Wis. 290, 72 N. W. 752; *Schutz v. State,* 125 Wis. 452, 104 N. W. 90. By the charge the jury were not permitted to find that Kittel was mistaken, but were forced to find that he either told the truth or wilfully swore falsely. We think the jury would have been justified in finding that he was mistaken, although he honestly believed he was telling the truth. In view of the situation as set out in the statement of facts, it seems clear that Kittel may have been mistaken as to whether the horse was north or south of the cattle-guard when struck, and whether the conflict of evidence in that regard might not have been accounted for on the ground of innocent mistake was a proper question for the jury. *Moore v. Kendall,* 2 Pin. 99; *Ely v. Tesch,* 17 Wis. 202; *Roberts v. State,* 84 Wis. 361, 54 N. W. 580; *Smith v. Lehigh Valley R. Co.* 170 N. Y. 394, 63 N. E. 338.

The court further, after instructing the jury that the witness Kittel was either telling the truth or wilfully falsifying, told them in effect that there was nothing improbable in his story, nothing that would suggest why it would be more favorable to him to have the horse struck at one place than at the other, and that there was nothing to impeach or overcome his testimony unless what plaintiff's witness saw were actually tracks made by this horse, and that they must endeavor to reconcile other testimony in the case with Mr. Kittel's. This instruction was clearly erroneous and prejudicial, because it excluded from the jury the right to consider Kittel's employment by the defendant as a circumstance to be considered in weighing his testimony, as well as the appearance of the witness, his demeanor, and the probability or improbability of his story, and from weighing his testimony in the light of well-recognized tests permissible for that purpose.

Other portions of the charge respecting the credibility of the evidence of the witness Miss Cormier and the rule respecting positive and negative testimony, referring to the testi-

mony of Miss Cormier and Mr. Kittel, were erroneous and calculated to prejudice the jury, because it was not correct under the circumstances of the case to tell the jury that Miss Cormier's testimony was not entitled to the same weight as that of Mr. Kittel because negative in form though positive in fact, since the jury might well be of the opinion, independent of the character of the evidence as to being positive or negative, that the witnesses were not equally credible, and whether they were or not was clearly for the jury. *Anderson v. Horlick's M. M. Co.* 137 Wis. 569, 575, 119 N. W. 342; *Van Salvellergh v. Green Bay T. Co.* 132 Wis. 166, 111 N. W. 1120; Jones, Ev. (2d ed.) § 898 (901); 17 Cyc. 801. We see no escape from the conclusion that the jury must have been prejudiced by the errors committed in the charge; therefore the judgment must be reversed.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded for a new trial.