HACK, Plaintiff in error, vs. THE STATE, Defendant in error.

*December 11, 1909—January 11, 1910.*

*Appeal and error: Immaterial errors: Criminal law: Summarily overruling plea in abatement: Preliminary examination: Docket entries: Waiver of arraignment and plea: Instructions to jury: Credibility of witnesses.*

1. Immaterial errors and inconsequential defects have been and will be disregarded by this court both in civil and criminal cases, under sec. 2829, Stats. (1898), and under sec. 3072m, Stats. (Laws of 1909, ch. 192).

2. Where the record transmitted to the circuit court by the examining magistrate showed that there had been a legal preliminary

Hack v. State, 141 Wis. 346.

examination, the summary overruling of a plea in abatement. to the effect that there had been no such examination, without requiring issue to be joined on such plea, was not prejudicial, even though irregular.

3. It is not essential that the examining magistrate should enter in his docket a finding that an offense had been committed and that there was probable cause to believe the defendant guilty thereof. It is sufficient if the record shows that defendant was. held to bail and gave bail.

4. An entry in the docket of the examining magistrate, that "the court bound the defendant over to the circuit court," sufficiently shows that the defendant was held to bail; and where it appears that a bail bond was given and approved it is immaterial that the amount thereof is not stated in the docket.

5. The right of arraignment and plea is waived by the defendant by his silence when he ought to demand it, in all cases (except capital cases) where he is fully informed as to the charge against him and is not otherwise prejudiced in the trial of the case by the omission of that formality. *Douglass v. State,* 3 Wis. 820, and other cases, overruled. TIMLIN, J., doubts.

6. Where the jury had been expressly charged that they should convict only in case they were convinced beyond a reasonable doubt, a subsequent statement to them that cases are to be decided upon the weight of evidence, not by counting witnesses, and that a single witness may be more satisfying than a half dozen witnesses who contradict him, was not erroneous.

7. Where a witness on one side is contradicted by one on the other side as to the pivotal fact on which the case turns, and there is no possibility that the testimony of either can be the result of a mere mistake, it is not prejudicial error to say to the jury that one or the other has committed perjury, and to suggest that a motive should be found for such perjury. BARNES, J.,. *dissenting,* is of the opinion that in this case (an action for selling liquor to a minor) an additional charge, given after the jury had reported that they were unable to agree, in which,. besides telling them that they should consider the motive, if any, of the complaining witness in making a false charge, the trial judge stated that there was nothing in the evidence to show why the witness should say that the defendant sold the liquor to him, rather than some other saloonkeeper, was argumentative and prejudicially erroneous.

ERROR to review a judgment of the circuit court for Iowa county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

The cause was submitted for the plaintiff in error on the.

brief of *Orton & Osborn*, and for the defendant in error on that of the *Attorney General* and *J. E. Messerschmidt*, assistant attorney general.

The following opinion was filed January 11, 1910:

WINSLOW, C. J.   The plaintiff in error (hereinafter called the defendant) was convicted of selling whisky to a minor of the age of thirteen years, and brings his writ of error to reverse the judgment.   The errors alleged will be taken up in their order.

1. A plea in abatement, to the effect that there had been no preliminary examination, was summarily overruled by the court without requiring issue to be joined thereon.   This was probably irregular, but it was in no sense prejudicial. *Guenther v. State,* 137 Wis. 183, 118 N. W. 640.   The record transmitted by the justice was before the court, and showed that there had been in fact an examination, and the only fault found with it was that the justice did not enter in his docket a finding that an offense had been committed and that there was probable cause to believe the defendant guilty thereof, but simply made this entry: "The court bound the defendant over to the circuit court of Iowa county at its next term."   This court has held that all that is necessary is that the justice should hold the defendant to bail or commit him.   *State v. Leicham,* 41 Wis. 565.   The words "bind over" are somewhat informal, but have a well understood meaning in the law, namely, to require a person to give bail to appear at the trial of a given case.   4 Am. & Eng. Ency. of Law (2d ed.) 574. The only defect, therefore, is that the amount of the bail bond does not appear in the docket entry; but, as it further appears by the return that a bond was approved, there is no doubt that a bond was given which must have satisfied the requirement of the justice, and the fact that the amount is not named in the docket is very immaterial.   The record shows that the defendant was held to bail and gave bail, and that is all that the statute requires.

2. By a singular oversight the defendant was not formally arraigned in the circuit court and never pleaded to the information.    An information in due form was filed; the jury was called and sworn; witnesses for both the state and the defendant were examined and cross-examined; the jury was charged by the court and rendered its verdict, in all respects as though issue had been formally joined.    Inasmuch as the information was valid and the jury duly sworn and charged with the defendant's deliverance, he was put in jeopardy, so that had he been acquitted he could not have been again prosecuted. He knew perfectly well the offense with which he was charged, and was allowed to make his defense just as fully and effectively as if a plea of not guilty had been made; and the question now is whether the inadvertent omission of arraignment and plea, which has not in the least affected any substantial right of the defendant, should be held fatal to the judgment.

It is freely conceded that the early Wisconsin decisions answer this question in the affirmative.    *Anderson v. State,* 3 Pin. 367; *Douglass v. State,* 3 Wis. 820; *Davis v. State,* 38 Wis. 487.    See, also, *Crain v. U. S.* 162 U. S. 625, 16 Sup. Ct. 952, where the authorities are reviewed and the doctrine contended for by the defendant fully sustained by a divided court.    It must also be conceded that it is held by the supreme court of the United States in the *Crain Case* that arraignment and plea are essential to due process of law, guaranteed to the citizen by the XIVth amendment.    A state could not therefore pass a law providing for trial without arraignment or plea; but that does not necessarily affect the question whether a citizen may not effectually waive that right.    This court has held that constitutional rights may be waived by the defendant, except perhaps in capital cases.    Thus an accused person has the absolute constitutional right to a trial by a jury, which means a body of twelve competent jurymen; yet this court held, as early as the case of *State v. Vogel,* 22 Wis. 471, that by not exercising his right of challenge the defendant waived all objections to the qualifications of jurors, and a verdict of

.guilty would stand notwithstanding the fact that one of the jurors was an alien and the further fact that his alienage was not known to the defendant. This doctrine was approved in *Flynn v. State,* 97 Wis. 44, 72 N. W. 373 (without, however, citing the *Vogel Case*), and even carried further, for the *Flynn Case* was a capital case, and the court said that the defendant's announcement that he accepted the jury was "in effect the withdrawing of *all* previous objections to the competency of the jurors, and a consent to be tried by that jury which could not afterwards be withdrawn." This rule has been followed in the following cases: *In re Roszcynialla,* 99 Wis. 534, 75 N. W. 167; *Emery v. State,* 101 Wis. 627, 78 N. W. 145; *Cornell v. State,* 104 Wis. 527, 80 N. W. 745; *Schwantes v. State,* 127 Wis. 160, 106 N. W. 237; and *Okershauser v. State,* 136 Wis. 111, 116 N. W. 769.

In the case of *In re Staff,* 63 Wis. 285, 23 N. W. 587, it was held that a statute permitting a defendant to waive a jury trial was not unconstitutional, and Justice LYON, in the opinion in that case, says (on p. 294) sec. 7, art. I [of the constitution], "confers many rights upon a person accused of crime, every one of which he may waive, without authority of statute, as has often been judicially determined, except the right to be tried by a jury. Such waiver may be express, or it may be by failure to make due objection and exception." He then makes an elaborate enumeration of the many rights conferred which the prisoner may waive, which is worth examination. In *Hill v. State,* 17 Wis. 675, and *Stoddard v. State,* 132 Wis. 520, 112 N. W. 453, it was held that, following the same principle, a defendant might waive his right to be present when the verdict was returned, and did so waive it by absenting himself voluntarily from the room when the jury came in. It is true that it was held in *State v. Lockwood,* 43 Wis. 403, that the right of the accused to a jury trial could not be waived, and this was followed in *Jennings v. State,* 134 Wis. 307, 114 N. W. 492, when it was held that the defendant

could not agree to a trial by eleven jurymen.   As said in
*Okershauser v. State, supra,* this rule, however, is not to be ex-
tended.

It must be conceded, therefore, that many constitutional
guaranties may be waived by the accused in all criminal ac-
tions, except capital cases, and the question here presented is
whether the court should follow the early cases holding that
arraignment and plea cannot be waived, or abandon that prin-
ciple.   Of course no rule of property is involved, and so the
court is measurably free to establish another rule if it seem
that the former rule is unsound or not supported by the better
reason.

The ancient doctrine that the accused could waive nothing
was unquestionably founded upon the anxiety of the courts to
see that no innocent man should be convicted.   It arose in
those days when the accused could not testify in his own be-
half, was not furnished counsel,- and was punished, if con-
victed, by the death penalty or some other grievous punish-
ment out of all proportion to the gravity of his crime.   Under
such circumstances it was well, perhaps, that such a rule
should exist, and well that every technical requirement should
be insisted on, when the state demanded its meed of blood.
Such a course raised up a sort of a barrier which the court
could utilize when a prosecution was successful which ought
not to have been successful, or when a man without money,
without counsel, without ability to summon witnesses, and not
permitted to tell his own story, had been unjustly convicted,
but yet under the ordinary principles of waiver, as applied to
civil matters, had waived every defect in the proceedings.

Thanks to the humane policy of the modern criminal law
we have changed all these conditions.   The man now charged
with crime is furnished the most complete opportunity for
making his defense.   He may testify in his own behalf; if he
be poor, he may have counsel furnished him by the state, and
may have his witnesses summoned and paid for by the state;

not infrequently he is thus furnished counsel more able than the attorney for the state. In short, the modern law has taken as great pains to surround the accused person with the means to effectively make his defense as the ancient law took pains to prevent that consummation. The reasons which in some sense justified the former attitude of the courts have therefore disappeared, save perhaps in capital cases, and the question is, Shall we adhere to the principle based upon conditions no longer existing? No sound reason occurs to us why a person accused of a lesser crime or misdemeanor, who comes into court with his attorney, fully advised of all his rights and furnished with every means of making his defense, should not be held to waive a right or privilege for which he does not ask, just as a party to a civil action waives such a right by not asking for it.

Surely the defendant should have every one of his constitutional rights and privileges, but should he be permitted to juggle with them? Should he be silent when he ought to ask for some minor right which the court would at once give him, and then when he has had his trial, and the issue has gone against him, should he be heard to say there is error because he was not given his right? Should he be allowed to play his game with loaded dice? Should Justice travel with leaden heel because the defendant has secretly stored up some technical error not affecting the merits, and thus secured a new trial because forsooth he can waive nothing? We think not. We think that sound reason, good sense, and the interests of the public demand that the ancient strict rule, framed originally for other conditions, be laid aside, at least so far as all prosecutions for offenses less than capital are concerned. We believe it has been laid aside in fact (save for the single exception that trial by a jury of twelve cannot be waived unless authorized by a specific law) by the former decisions of this court.

It is believed that this court has uniformly attempted to

disregard mere formal errors and technical objections, not af-
fecting any substantial right, and to`adhere to the spirit of the
law which giveth life rather than to the letter which killeth.
It may not always have succeeded; it is intensely human, but
since the writer has been here he knows that the attempt has
been honestly made.

In this line the court is glad to welcome legislative assist-
ance and approval. By ch. 192, Laws of 1909 (sec. 3072*m*,
Stats.), it is provided that no judgment, civil or criminal, shall
be set aside or new trial granted for any error in admission
of evidence, direction of the jury, or any error in pleading or
procedure, unless it shall appear that the error complained
of has affected the substantial rights of the party complain-
ing. How much this adds to the provisions of sec. 2829,
which has been on the statute books since 1858, is not entirely
clear. At least it shows the legislative intent to specifically
apply the law to criminal actions. Its terms are clear, and
will unquestionably assist the court in its effort to do substan-
tial justice in all actions, either civil or criminal, without re-
gard to immaterial errors or inconsequential defects. This
court will loyally stand by this law, and will earnestly en-
deavor to administer it so as to do equal and exact justice so
far as human effort can accomplish that end.

Our conclusion is that the doctrine of *Douglass v. State,*
3 Wis. 820, and the cases following it, should be overruled.
The principle now declared is that the right of arraignment
and plea will be waived by the defendant by his silence when
he ought to demand it, in all cases (except capital cases)
where it appears that he is fully informed as to the charge
against him and is not otherwise prejudiced in the trial of the
case by the omission of that formality. -- Other Code states so
hold. *People v. Osterhout,* 34 Hun, 260; *People v. Bradner,*
107 N. Y. 1, 13 N. E. 87; *State v. Cassady,* 12 Kan. 550;
*State v. Straub,* 16 Wash. 111, 47 Pac. 227; *Hudson v. State,*
117 Ga. 704, 45 S. E. 66.

3. The last error alleged relates to the charge. The court concisely and correctly instructed the jury as to the presumption of innocence and their duty to convict *only* if convinced beyond a reasonable doubt of the defendant's guilt, and the jury retired. After some hours spent in consultation without reaching an agreement they were brought into court and the trial judge gave them an additional charge, in which he told them, in connection with other remarks, that cases were to be decided upon the weight of evidence, not by counting witnesses, and that a single witness may be more satisfying than a half dozen witnesses who contradict him; further, that this was not a case of mistake, but some one had falsified, and that they might consider the motive of the boy who testified to purchasing the liquor, if he had any motive in making a charge that was false, and other remarks in the same general line.

It has been held by the court that in a case where one witness on one side is contradicted by another witness on the other side as to the pivotal fact on which the case turns, and there is no possibility that the testimony of either witness can be the result of mere mistake, it is not prejudicial error to say to the jury that one or the other has committed perjury and to suggest that a motive should be found for such perjury. *Jackson v. State,* 91 Wis. 253, 64 N. W. 838; *Douglass v. State,* 43 Wis. 392. See, also, *Schutz v. State,* 125 Wis. 452, 104 N. W. 90. We do not regard the statement that cases are to be decided upon the weight of evidence, not by counting witnesses, as calculated to convey a false impression to the jury. They had been expressly and clearly charged that they were only to convict in case they were convinced beyond a reasonable doubt; and this instruction was neither expressly nor impliedly withdrawn, and the one afterward given as to the weight of evidence is not inconsistent with it.

*By the Court.*—Judgment affirmed.

KERWIN, J., dissents.

The following opinion was filed January 11, 1910:

TIMLIN, J. (*dubitans*). There was neither arraignment nor plea in this case. The decision overrules *Anderson v. State*, 3 Pin. 367; *Douglass v. State*, 3 Wis. 820; and *Davis v. State*, 38 Wis. 487. These precedents, while mitigating the rigor of the ancient law, had their roots deep in antiquity. Cooley, Const. Lim. (5th ed.) 379, and note 1; Id. (7th ed.) 439, note 2. They were in harmony with the great weight of authority. 2 Ency. Pl. & Pr. 761–792. As stated in the majority opinion, they stood in the supreme court of the United States for due process of law. Notwithstanding the Chief Magistrate, who holds position and promotion in the hollow of his hand, has spoken, and that his words have kindled in the University a flame in whose light we are now administering the criminal law, I am reluctant to proceed so radically and so rapidly along the path of reform. In every well-ordered commonwealth the legislature is the appropriate exponent of public opinion. The courts, for obvious reasons, are not and should not be such exponent. I think even we who are in sympathy with the President and the University should have waited for the legislature to act.

Again, regarding these overruled-precedents as merely establishing rules of procedure, is it possible to establish any orderly procedure which will relieve from the consequences of such gross negligence as failure to arraign the accused and to ascertain whether he pleads guilty or not guilty, former conviction, former acquittal, the statute of limitations, lack of jurisdiction in the court, privilege from arrest, or some other defense? When we have changed the precedents to meet this case of negligence, will that avail against negligence of the same degree which will appear in another form, or with reference to some other essential of an orderly trial? These considerations make me doubt, hesitate, and refuse my assent. Again, with such slaughter of precedent there should go in

justification or mitigation "reasons of good regard." Else this were a savage spectacle.

Now it may be that these precedents deserved this fate. They perhaps deserved death in order that we all might live. They were certainly guilty of being old. They were not innocent of having been born at the wrong time. They perhaps distracted the circuit judges in the consideration of fine scholastic distinctions concerning lack of ordinary care by intruding upon them some rude, practical experience in the exercise of ordinary care. Like primeval man before his fall, unconscious of sin, they neglected to cover themselves with foliage. They obtruded their classical clearness and simplicity against the turgid toploftiness which closed the nineteenth and began the twentieth century. They failed to stand for any corporate privilege or advantage. For all this they perhaps deserved amortization. But before Oblivion's curtain falls upon them forever, let me say that in my youth, before professional success and competence and a seat on the supreme bench had their value impaired by realization, and while such things were bright with the glamour of anticipation, these precedents seemed to me profound in their wisdom, unimpeachable in their authority, and clear, definite, and correct in their doctrine. Mentors of my brighter days, farewell!

The following opinion was filed January 12, 1910:

BARNES, J. (*dissenting*). I agree with the chief justice that ch. 192, Laws of 1909 (sec. 3072*m*, Stats.), should receive a liberal construction, and that the failure to arraign the defendant on trial was an immaterial error that might well be disregarded after verdict. I think, however, the judgment should be reversed. The material testimony in the case was given by the complaining witness on the one side, and the defendant in the case and his mother on the other. The evidence offered by the state was in direct conflict with that of-

fered by the defendant. After the jury had deliberated for
some time it announced that its members were unable to agree
upon a verdict, whereupon the court delivered an additional
charge, in which it expressed surprise at the result announced.
The court told the jury that it could consider the motive of
the complaining witness in fabricating the story he told, if he
did fabricate it, and the lack of interest which he had in testi-
fying falsely, as well as the interest of the defendant in the
result of the prosecution. This was certainly going far
enough. The jury was further instructed:

"There is nothing in the evidence in this case to show why
he [the complaining witness] should say that *William Hack*
sold this [the liquor] to him, rather than some other saloon-
keeper."

I think this portion of the charge was not only argumenta-
tive, but was well calculated to result prejudicially to the de-
fendant. Taken as a whole, an intelligent juror would natu-
rally understand the language of the court to mean that in its
opinion there was no reason or room for disagreement, because
it must be assumed that the complaining witness told the truth
for the reason that he had no motive for falsifying, while the
defendant and his mother had. It is substantially the same
kind of an instruction that was condemned by this court in
*Bodenheimer v. C. & N. W. R. Co.* 140 Wis. 623, 123 N. W.
148, and in other cases cited in the opinion in that case. It
has been the policy of our jurisprudence in this state to in-
hibit courts from telling juries how they thought cases should
be decided. I think such policy represents the highest de-
velopment of the law pertaining to jury trials. So long as
juries are permitted to decide questions of fact, they should
be permitted to do so without dictation or suggestion. In the
ordinary case, where the evidence is conflicting, an intimation
from the trial court as to how it thinks facts should be found
is all-sufficient to secure a verdict in accordance with the sug-
gestion. Certainly, no one can say that the instruction in

question was not directly responsible for the verdict returned. The reasonable probabilities are that it was. If erroneous, it was in my judgment prejudicial; and I think it was erroneous.

The following opinion was filed January 29, 1910:

MARSHALL, J. (*concurring*). The decision seems to be such a significant recognition of the written law designed for judicial guidance by the wise lawgivers of our early state history that I cannot well forego adding briefly to the opinion of the chief justice, to the end that no thought may, necessarily, be indulged in that the result is a stretch of judicial authority, or inconsiderate abrogation of precedents, in response to mere public opinion, generated by any one however exalted, or promoted by any class however worthy.

The great reluctance of courts to lay aside a technical rule, sanctified by age, even after all reasons for its being dignified as vital have ceased to exist, and few even appreciate its basis or the reason for the former significance,—is well illustrated by the tenacity with which they have adhered to the idea that arraignment and plea, before impaneling the jury in a criminal case, are so essential to validity of the trial, that neither ought to be, and that the plea certainly is not, a matter that can be waived. That idea, with some others, long prior to the Code, only had vitality to vex courts, afford facility to persons not adequately imbued with true legal ethics, to lay traps for judicial administrators and embarrass and sometimes defeat justice, and was intended to be swept away by the Code adopted more than half a century ago.

The reformed procedure was received coldly by many, especially of the older practitioners and judges. We do not to this day fully appreciate the great judicial revolution intended by it, rendering justice more certain, more speedy and more economical of attainment. Appreciation of the in-

tended change has come about so slowly that, after fifty-three years, we are quite far from fully comprehending its beneficent purpose, and judicial inertia in that regard in the particular situation' is only overcome by a redeclaration, with some slight change of phraseology, of the wise public policy that,

"The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." Sec. 2829, Stats. (1898).

How those words grow upon one as we comprehend the conditions the Code was intended to displace! Old methods with their numberless technicalities and sanctity of unsubstantials, at one stroke, were, in contemplation of the statute builders, put aside and in place thereof was erected a simple, easily understood and administered system of procedure, conformable to the idea that the attainment of justice is the only legitimate end sought in litigation, and that mistakes without prejudice, however numerous, and mere useless formalities should not bar the way to such attainment, nor make that end uncertain or needlessly difficult to reach.

The reason for the ancient vital character of calling the prisoner to stand before the court with uplifted hand in acknowledgment of his identity, reading the indictment to him in English, propounding the formal question in respect thereto and taking and recording his response, was because of the indictment being in Latin, the accused not having the aid of counsel nor being permitted to testify in his own behalf. When the charge came to be framed in quite simple English, understandable by most any one, and the prisoner to have the assistance of counsel and the right to testify in his own behalf and to have the full benefit of the presumption of innocence the same as if he denied the charge in the most formal and positive way, whether he did so in fact or not, the mere ar-

raignment and plea lost very much of their ancient signifi-
cance, since going to trial without them involved, by necessary
inference, a denial of guilt and challenge of the state to prove
the contrary. Subsequent holdings that such formalities could
not be waived expressly or by necessary inference gave con-
trolling effect to compliance with useless formalities.

That a conviction by a jury without arraignment or plea is
invalid is held by many courts under common-law procedure
and some under Code procedure as well. Case after case
might be cited. But the more extended the citations the
greater the proof of reluctance of courts to free themselves,—
even with the assistance of written laws in spirit commanding
it,—from the thraldom, so to speak, of useless technicalities.
This court, especially in recent years, has, generally speaking,
cut loose from all such interferences with the administration
of justice. There are a few situations, where to break away
meant the overruling of a long line of decisions made, per-
haps, by overlooking or not appreciating the intended displace-
ment by the Code with which some have not been able easily,
if at all, to bring themselves into full harmony.

In the situation suggested the re-enactment of sec. 2829,
Stats. (1898), as an admonition from the body of the people,
perhaps may be helpful in rescuing the judiciary from any
such disability.

The first decision in this state as to the absolute necessity
of a formal plea was *Anderson v. State,* 3 Pin. 367, which was
followed by *Douglass v. State,* 3 Wis. 820. They were de-
cided before the adoption of the Code.

The logic of such cases was not fully followed after such
adoption in *State v. Cole,* 19 Wis. 129, in that the court held
that impaneling and swearing the jury before arraignment
and plea, was not fatal error. That case was discussed with-
out being overruled in *Davis v. State,* 38 Wis. 487, the court,
however, affirming the early cases. That the subject was not
very much studied, is evident because it was said no authority

to the contrary of the decision was cited and the court could not find any, and because the effect of the Code was entirely overlooked.

As early as 1845, as indicated in *Fernandez v. State,* 7 Ala. 511, cited by the court, under a Code somewhat similar to ours, it was held that to go to trial without objection, was equivalent to a formal arraignment and plea and that the mere formality of entering a plea on the record could be satisfied at any time.

In *People v. Osterhout,* 34 Hun, 260, also cited by the court, the subject was treated thus :-

"The defect is merely technical, affecting no substantial right whatever." "Nor may this court on appeal regard technical errors or defects or exceptions which do not affect substantial rights" (referring to a statute from which ours was copied). "If this section is to have any meaning at all it applies exactly to a case like the present. . . . Everyone who knows anything of a criminal trial must see that the omission did the defendant no harm. . . . Where the prisoner appears with his own counsel, the omission formally to arraign and ask for a plea is immaterial to his rights and may be deemed to be waived."

This in *People v. Bradner,* 107 N. Y. 1, 9, 13 N. E. 87, 90, is to the same effect:

"A formal plea of not guilty is not necessary to put the defendant on trial." Further, in effect, going to trial as if an issue were formed, all participants acting as if all formalities had been complied with, is equivalent to arraignment and plea. "It would be sacrificing substance to form not to give effect to the transaction according to the plain understanding of the court and the parties."

Further cases cited by the court are on the same line, as follows:

In *State v. Cassady,* 12 Kan. 550, it was conceded that absence of a plea formally joining issue was fatal to a conviction at common law. "But," said the court, "under our

statutes we think a different rule must obtain." And referring to statutes to accomplish the same result as our sec. 2829, and a similar statute to ours as to entering pleas for the accused upon his refusal to plead,

"It seems to us that under those sections the omission did not and could not affect the substantial rights of the defendant, and therefore is not ground for disturbing the judgment."

*State v. Straub,* 16 Wash. 111, 47 Pac. 227, is significant in that it was a capital case. The Code was the same, substantially, as ours. Acknowledging fully the common-law rule, the court said:

"We think, under the system adopted by the Code in this state, that such an omission is purely technical, that it does not affect any of the substantial rights of the defendant, and that, if otherwise properly convicted, the judgment should not be reversed. Indeed, this is the holding of many modern courts under statutes similar to ours."

In *Hudson v. State,* 117 Ga. 704, 45 S. E. 66, the court said, substantially, a person who goes to trial without a formal plea, but in all respects as if one had been entered, and has had the benefit of the presumption of innocence, cannot thereafter take advantage of what he thus waives. He is not prejudiced in any right.

In view of the foregoing it cannot well be said the court, by the judgment here, has changed the law, invading the legislative field in that regard. The legislature by the Code abrogated the doctrine that arraignment and plea in a criminal case cannot be waived. The difficulty is that such fact was overlooked in *Davis v. State,* 38 Wis. 487. That and, perhaps, a few other failures here to respond to the broad spirit of the judicial reform of 1856, doubtless led to the re-enactment in 1909 of sec. 2829 of the Statutes.

While, in my judgment, the decision here is conformable to and required by the law of 1856 and numerous decisions that rights even of a fundamental character may be waived in a

criminal as well as in a civil case, overruling the principles of *Davis v. State, supra,* I claim for the court inherent power and duty to reach the same result independently of legislative assistance. The doctrine of *Davis v. State* as to arraignment and plea not being waivable, is wholly of judicial creation. Not only, as said by the chief justice, have the basic reasons which suggested such doctrine as a guard against injustice, long since ceased to exist, but just as weighty reasons, prior to the legislation of 1856, called for its abrogation as a useless interference with the due administration of justice. The inherent power of the court, which originated the doctrine to satisfy seeming requirements of the social state which no longer exist, may properly be used to lay it aside as a legal curiosity appreciable only by a knowledge of its antecedents and inadaptable for any beneficial purpose in our modern life.