## PEOPLE *v.* CORSI.

1. CRIMINAL LAW—PLEADING—WAIVER—JURISDICTION.
   In a prosecution for assault, by pleading to the information, in which, as well as on the examination, the name of the injured person was correctly given, defendants waived the misnomer of the injured person in the complaint, warrant, and return of the magistrate, and conferred jurisdiction upon the court to proceed with the trial.    3 Comp. Laws 1915, § 15767.

2. SAME—INFORMATION—LOST RECORD—DUPLICATION.
   Under 3 Comp. Laws 1915, §§ 12264, 12267, providing

for the duplication of lost records, it was not error for the trial court to permit the filing of a carbon copy of the original information, which was lost.

Exceptions before judgment from Dickinson; Flannigan (Richard C.), J. Submitted June 16, 1921. (Docket No. 111.) Decided October 3, 1921.

Andrew Corsi was convicted of assault and battery, and Pasquale Sandrini was convicted of assault with intent to do great bodily harm less than the crime of murder. Affirmed.

*Martin S. McDonough*, for appellants.

*J. C. Knight*, Prosecuting Attorney, for the people.

MOORE, J. Upon a trial by jury defendant Corsi was convicted of assault and battery upon one Jess Jessen, and Sandrini was convicted of assault with intent to do great bodily harm less than the crime of murder. Upon rendition of the verdict a written motion in arrest of judgment was filed by defendants. This motion was overruled. The case is here upon exceptions before sentence.

Upon denying the motion the court filed a written opinion which states the situation so fully that we quote from it:

"The respondents were arrested on a warrant charging them with the commission of an assault with intent to do great bodily harm less than the crime of murder, at the city of Iron Mountain, Michigan, on May 23, 1920. Following an examination, which was had June 4, 1920, they were bound over for trial. Upon an information charging that offense, they were arraigned and pleaded not guilty at the July, 1920, term of court. The July term being non-jury, the case was continued until the September, 1920, term, when trial was had. A verdict of guilty of assault and battery against Corsi and of guilty

of assault with intent to do great bodily harm less than the crime of murder against Sandrini was returned. Judgment on the verdict has not been entered.

"In the complaint and warrant under which the respondents were arrested and examined, and in the return of the magistrate, the name of the person assaulted is given as 'Lee Jensen.' The name of the person assaulted was not Lee Jensen, but Jess Jessen, a well-known deputy sheriff of Iron county, Michigan. The complaint was sworn to by a police officer of the city of Iron Mountain, the day following the assault and while Jessen was in a hospital at that place, under treatment for the wounds inflicted upon him in the affray.

"On the examination, Jessen, the person assaulted, was a witness for the people. He gave his name as Jess Jessen. By the witnesses who testified on the examination he was identified as the person assaulted and by the name of Jess Jessen. That he was also known by the name of 'Lee Jensen' or that a person named 'Lee Jensen' had been assaulted by the respondents, there was no evidence and no claim before the magistrate. Nevertheless, amendment of the complaint or warrant, correcting the name of the person alleged to have been assaulted, was not asked for or made at the examination.

"At the trial at the circuit, evidence was introduced by the people tending to show an assault on Jess Jessen by Corsi with rocks picked up from the roadway, and by Sandrini with a knife. There was ample evidence to support the verdict against each of the respondents as returned. There was no evidence introduced on the trial tending to show that Jessen was also known by the name of Lee Jensen, or of an assault by the defendants, or either of them, on a person named Lee Jensen, or that a person of that name existed.

"The information was present in court during the trial and was on the judge's desk during the charge and when the jury retired. Thereafter it became lost or mislaid and has not been found.

"Claiming the information as well as the complaint, warrant and return of the magistrate stated the name of the person assaulted as 'Lee Jensen,' the

respondents, after conviction, moved in arrest of judgment on the grounds, in substance, that the verdict was against the constitutional rights of the respondents and conferred no jurisdiction to sentence because, *first,* there was no evidence tending to show the respondents, or either of them, guilty of assault on a person named Lee Jensen, and *second,* conceding there was evidence tending to show an assault by the respondents on Jess Jessen, there was no complaint, warrant or information charging an assault upon him.

"In support of the contention that the name of the person assaulted as it appeared in the information was Lee Jensen, the respondents filed the affidavit of M. S. McDonough, their attorney, who therein states he examined the information on the opening day of the trial and took notes thereon, and that it charged the respondents with having committed an assault with intent to do great bodily harm less than the crime of murder upon one Lee Jensen.   In opposition are the affidavits of J. C. Knight, prosecuting attorney, and W. S. Cudlip, deputy county clerk.   The prosecuting attorney deposes, in substance, that before the information was sworn to or filed, he placed it in the court files of the case; that when drafted and left in the file case, the name of the person the defendants were charged with assaulting read 'Lee Jessen;' that subsequently he learned the correct name was Jess Jessen and not Lee Jensen; that he caused his office copy of the information to be so corrected; that thereupon he went to the county clerk's office, where, at his request and in his presence, the deputy clerk changed the information that had been left in the court file case to read Jess Jessen instead of Lee Jessen, and that such correction was made by the deputy clerk before the information was filed or read to the respondents.   Cudlip, the deputy clerk, deposes in substance that before the information was sworn to or filed, and before the opening of the July, 1920, term of the court, he, at the request of the prosecuting attorney, changed the information the prosecuting attorney had placed in the court file to read Jess Jessen instead of Lee Jessen.

"Attached with the affidavits is the prosecuting attorney's office copy of the information which, in his

affidavit, he calls a carbon copy. To the naked eye, or under a glass, no erasure or change of the surname 'Jessen' is apparent in the carbon copy. That the first name 'Jess' was inserted by type striking on ribbon and that the surname 'Jessen' and the remainder of the typewriting in the copy is carbon is evidence on inspection.

"That the surname 'Jessen' appeared in the information as first drafted, and that the name 'Lee' was changed to read 'Jess' before the information was sworn to or filed, and that, when the respondents pleaded to the information, the name of the person they were therein charged with assaulting was Jess Jessen, is the conclusion reached. The explanation of the affidavit of respondents' counsel is that, in going through the files, he must have confused the information with the complaint or warrant.

"The name of the injured party having been given at the examination and in the information as Jess Jessen, the misnomer of the injured party in the complaint, warrant and return of the magistrate was, under repeated decisions of the Supreme Court, waived by the respondents by their plea of not guilty to the information.

"Of the effect on the verdict of a variance such as is claimed, discussion is unnecessary in view of the conclusion of the court that the variance did not exist. But if the variance existed as claimed, it would not be fatal because, under the facts of this case, the right to assail the verdict on that ground was waived by the respondents, and, if not, the alleged variance could now be cured by amendment of the information. * * *

"A variance in that particular may be cured by amendment of the information. 3 Comp. Laws 1915, § 15749. * * * Cases to the contrary will be found, but in States having statutes like ours (3 Comp. Laws 1915, §§ 15746 and 15749), the weight of modern judicial thought will be found in sympathy with the proposition that, where it appears notwithstanding the variance, the accused was given a full, fair and impartial trial of the question of his guilt or innocence of committing the criminal act charged upon the person, and only person, named in the evi-

dence and instructions to the jury, equally in every respect as he would have received and been entitled to receive had the name of the injured party disclosed by the evidence been inserted in the information, and where it further appears the respondent knew of the variance and that it could and would be corrected if mentioned, and, without calling it to the attention of the court by motion, objection or otherwise, elected to sit tight and 'play the game' (as the court said of the respondent in *Hock* v. *State*, 141 Wis. 346 [124 N. W. 492, 45 L. R. A. (N. S.) 664]), with 'loaded dice,' he may be held to have waived his right to object after conviction."

When the defendants pleaded to the information they conferred jurisdiction upon the court to proceed with the trial.   Section 15767, 3 Comp. Laws 1915; *Washburn* v. *People*, 10 Mich. 383; *People* v. *Jones*, 24 Mich. 218; *People* v. *Wright*, 89 Mich. 70.

It was not error for the court to permit the filing of a carbon copy of the original information.   Sections 12264, 12267, 3 Comp. Laws 1915.

Upon this record it would be a travesty upon the administration of justice to permit the defendants to be discharged.

The verdict of the jury and the order of the court overruling the motion of the defendants are affirmed, and the case is remanded for further proceedings.

STEERE, C. J., and WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.