STATE of Wisconsin, Plaintiff-Respondent,

v.

Esteban MARTINEZ, Defendant-Appellant.†

Court of Appeals

*Nos. 94–3006–CR, 94–3007–CR. Submitted on briefs September 19, 1995.— Decided November 22, 1995.*

(Also reported in 542 N.W.2d 215.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of Esteban Martinez.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney

general, and *Michael R. Klos*, assistant attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

SNYDER, J. Esteban Martinez appeals from two judgments of conviction as well as an order denying him postconviction relief.[1] Martinez raises the following issues: (1) whether he was lawfully under state supervision when his probation agent conducted a warrantless search of his residence, (2) whether he was entitled to a probable cause hearing within forty-eight hours of being placed on a probation hold, (3) whether the trial court was deprived of subject matter jurisdiction, (4) whether there was evidence of judicial and prosecutorial misconduct, and (5) whether an alleged defect in the arraignment prior to his first conviction deprived the trial court of authority to proceed on an unrelated charge.

We conclude that Martinez consented to the probationary search of his residence and that he was then lawfully placed on a probation hold. Martinez' contentions of a lack of subject matter jurisdiction and of judicial and prosecutorial misconduct are premised on his belief that the state was not lawfully supervising his probation. We disagree. Finally, because Martinez did not object at the time of his arraignment to the alleged defect and has made no argument that he was

---

[1] The first judgment of conviction was for possession of marijuana with intent to deliver, § 161.41(1m)(h)1, STATS., and failure to have a tax stamp, § 139.95(2), STATS. The second conviction was based on a separate incident resulting in the same two charges, plus an additional charge of bail jumping, § 946.49 (1)(b), STATS.

prejudiced by it, that issue has been waived. Accordingly, we affirm.

Martinez was originally convicted of burglary in Texas in 1988 and placed on ten years probation. In August 1992, Martinez met with his Texas probation agent in order to obtain permission to move to Sheboygan, Wisconsin. As part of the transfer process, the Texas probation agent had Martinez sign an agreement which stated that he would "comply with the conditions of probation as fixed by both the states of Texas and [Wisconsin]." Martinez was also required to check in monthly with his Texas probation agent, either in person or by mail. After the agreement was signed, Martinez was allowed to move to Wisconsin.[2]

Martinez arrived in Wisconsin shortly thereafter, and his Texas probation agent sent the transfer papers to Wisconsin in October. These papers were received at Wisconsin's interstate compact office in early November, and the case was assigned to Agent Scott Kuehn for investigation. During the interim, Martinez continued to check in with his Texas probation agent by mail.

Kuehn met with Martinez on December 1, 1992. At that meeting, Kuehn explained the transfer process and the probation rules that would govern Martinez. During the meeting, Martinez was asked to sign a form indicating that he would be supervised under Wisconsin's probation and parole rules. Martinez assented and signed the form. The form included the statement, "You shall make yourself available for searches or tests ordered by your agent including but not limited to

_____

[2] This procedure did not comport with the requirements of the interstate compact for the transfer of probationers, which contemplates the prior investigation and approval of the receiving state.

urinalysis, breathalyzer and blood samples or search of residence or any property under your control."

A few days later, Kuehn paid a visit to Martinez at his residence. Martinez was not at home. However, Martinez' sister showed his room to Kuehn. Kuehn did not notice anything out of the ordinary.

The following day, Kuehn received a phone call from a detective in the Sheboygan city-county drug enforcement unit. The detective told Kuehn that he had received information from a confidential informant indicating that Martinez had marijuana and possibly a handgun in his residence. The detective further stated that the confidential informant was reliable based on prior contacts and that the informant had knowledge that Martinez' probation agent (Kuehn) had visited his residence one day earlier.

Relying on this information, Kuehn requested permission from his acting supervisor to do a search of Martinez' residence. Permission to conduct the search was granted. Agents from the Department of Corrections (DOC), including Kuehn, conducted the search and were accompanied by members of the Sheboygan County Sheriff's Department.[3] The agents searched Martinez' residence and found marijuana, scales and a drug ledger. Martinez was then detained on a probation hold.

The State filed a criminal complaint charging Martinez with possession of a controlled substance with intent to deliver under § 161.41(1m)(h), STATS., and the companion charge of no tax stamp, § 139.95(2), STATS. Martinez made an initial appearance the same date the complaint was filed, but one week after he was taken into custody on the probation hold. He was subse-

---

[3] Kuehn requested the assistance of the sheriff's department "for our safety and for securing of the residence."

quently found guilty of these charges on the basis of stipulated facts, and a sentencing date was scheduled. When he failed to appear for sentencing, a bench warrant was signed for his arrest.

One month later, on a tip from an informant, the Sheboygan city-county drug enforcement unit obtained a search warrant and, upon executing the warrant, discovered Martinez. One-fourth of a pound of marijuana was also seized. Martinez was arrested and charged with failing to abide by the terms of his bond, and he was again charged with possession of a controlled substance with intent to deliver and the companion tax stamp charge. *See* §§ 161.41(1m)(h) and 139.95(2), STATS. Ten days later, on the date set for sentencing in the first case, Martinez waived a preliminary hearing and entered a plea of guilty to each of the three new counts. He was then sentenced in both cases.

Martinez sought to appeal his conviction and was appointed a state public defender.[4] Martinez' pro se motion for postconviction relief was denied, and this appeal followed.

The first four issues Martinez raises are all dependent upon whether he was lawfully under state supervision at the time of the initial search. This requires a review of constitutional principles and the

---

[4] The state public defender assigned to the case determined that this would be a no merit appeal pursuant to RULE 809.32, STATS., and informed Martinez of this. Without communicating with his counsel, Martinez filed a pro se motion with the trial court, which that court treated as a motion for postconviction relief. The public defender concurrently filed a no merit appeal. Because of the pending motion before the trial court, Martinez filed a motion with this court asking for dismissal of the no merit appeal. That motion was granted.

application of WIS. ADM. CODE § DOC 328.21 to the facts. A trial court's application of constitutional principles to particular facts will be independently reviewed by this court. *State v. Durbin,* 170 Wis. 2d 475, 482, 489 N.W.2d 655, 658 (Ct. App. 1992). The construction of an administrative rule or regulation is a question of law which is reviewed de novo. *Armour v. Klecker,* 169 Wis. 2d 692, 697, 486 N.W.2d 563, 565 (Ct. App. 1992).

We first address the issue of the validity of the search of Martinez' residence. Martinez argues that since the DOC had never formally accepted responsibility for his probation under the uniform act for out-of-state parolee supervision, § 304.13, STATS., Kuehn did not have supervisory authority over him and therefore had no authority to conduct a warrantless search of his residence. Martinez further contends that if the DOC lacked the authority to conduct the search, then all evidence gathered pursuant to the search should have been excluded as evidence taken in violation of the Fourth Amendment of the United States Constitution. Because we conclude that Martinez consented to the search of his residence, we disagree.

The uniform act for out-of-state parolee supervision (the compact) provides for the transfer of supervision of probationers and parolees from their home "sending state" to a new "receiving state." *See* § 304.13(1), STATS. The compact contemplates that the sending state will file the necessary papers and application with the receiving state, which will then process the paperwork and perform a simple investigation before granting permission for the transfer of probation. *See id.* The compact also provides that any probationer transferred will be under the supervision of the DOC and subject to state probation rules. *See* subsec. (2).

■

The provisions of the compact contemplate preapproval of the transfer. In this case, that did not occur. However, Martinez' status as a probationer under the supervision of the State of Wisconsin and Kuehn is not dependent upon compliance with the provisions of the compact. Martinez had consented to his own supervision by Kuehn.

Before moving to Wisconsin, Martinez had read and signed an agreement stating that he would "comply with the conditions of probation as fixed by both the states of Texas and [Wisconsin]." When Kuehn met with Martinez, Martinez signed an agreement indicating that he would follow Wisconsin's probation rules. This agreement provided that Martinez would "make [him]self available for searches or tests ordered by [his] agent including but not limited to urinalysis, breathalyzer and blood samples or search of residence or any property under [his] control." By reading and signing these agreements, Martinez knew what rules would apply to him. He had signed consent forms in both Texas and Wisconsin that clearly indicated that he was to be subject to Wisconsin's rules for probationers. We conclude that Martinez freely consented to probationary supervision by Kuehn.

Having determined that Martinez consented to the supervisory authority of the Wisconsin probation system, we now turn to the validity of the warrantless search. The Supreme Court has held that a warrantless search conducted pursuant to valid state regulations which themselves satisfy the Fourth Amendment's reasonableness requirement will be upheld. *Griffin v. Wisconsin*, 483 U.S. 868 (1987). In coming to its decision, the Court determined that "[a] State's operation of a probation system . . . presents

'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Id.* at 873-74. These "special needs" warrant a lesser amount of protection by the Fourth Amendment because "[t]o a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions." *Id.* at 874 (quoted source omitted).

█

The Court further determined that although a probationer has a somewhat lower expectation of liberty than does the average citizen, he or she does have Fourth Amendment rights which cannot be disregarded. *See id.* at 875. In contemplating the search conducted in *Griffin*, the Court found that "the special needs of Wisconsin's probation system make the warrant requirement impracticable and justify replacement of the standard of probable cause by 'reasonable grounds,' as defined by the Wisconsin Supreme Court." *Id.* at 875-76. Under *Griffin* then, a warrantless probation search is valid if it is based on "reasonable grounds."[5]

---

[5] "Reasonable grounds" in *State v. Griffin*, 131 Wis. 2d 41, 60, 388 N.W.2d 535, 542 (1986), *aff'd*, 483 U.S. 868 (1987), was defined by WIS. ADM. CODE § HSS 328.21(3)(a). This same language is now codified in WIS. ADM. CODE § DOC 328.21. This section states in pertinent part:

(3) SEARCH OF LIVING QUARTERS OR PROPERTY. (a) A search of a client's living quarters or property may be conducted by field staff if there are reasonable grounds to believe that the quarters or property contain contraband. Approval of the supervisor shall be obtained unless exigent circumstances, such as suspicion the

231

Applying WIS. ADM. CODE § DOC 328.21 to the present facts reveals that reasonable grounds did exist for the search of Martinez' residence. Kuehn had received a tip provided by the detective's confidential informant. The detective stated that the informant was reliable, basing his judgment upon previous experiences with the informant. The informant's veracity was backed up by the additional statement that Martinez had received a home visit from Kuehn the day before. This information was passed along to Kuehn, who decided to follow up on it.

■

Once a probation agent determines that reasonable grounds for a search exist, the code dictates that a certain procedure is to be followed in carrying out the search. The code states that "[a]pproval of the supervisor shall be obtained unless exigent circumstances . . . require search without approval." WIS. ADM. CODE § DOC 328.21(3)(a). Kuehn followed this procedure. He petitioned his supervisor for permission to search Mar-

parolee will destroy contraband or use a weapon, require search without approval.

. . . .

**(7)** REASONABLE GROUNDS. In deciding whether there are reasonable grounds to believe that a client has used, possesses or is under the influence of an intoxicating substance, that a client possesses contraband or that a client's living quarters or property contain contraband, a staff member shall consider any of the following:

. . . .

(b) Information provided by informants.

. . . .

(d) The reliability of the informant. In evaluating the informant's reliability, attention shall be given to whether the informant has supplied reliable information in the past and whether the informant has reason to supply inaccurate information.

. . . .

(i) The need to verify compliance with rules of supervision and state and federal law.

232

tinez' residence, relaying the information provided by the detective. Kuehn was given permission to conduct the probation search.[6] The tip proved to be valid as the search turned up marijuana in Martinez' bedroom and in the basement, along with scales and a drug ledger. The facts of this case clearly show that the warrantless probation search conducted by Kuehn was justified. Following the search, Martinez was taken into custody on a probation hold.

Martinez next argues that he was improperly denied a probable cause hearing within forty-eight hours of his detention. Because we conclude that Martinez was detained pursuant to a probation hold, the requirements of a probable cause hearing are not applicable.

*County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991), requires a judicial determination of probable cause within forty-eight hours of a warrantless arrest. Wisconsin criminal procedure requires that any person who is arrested must have an initial appearance within a reasonable time after arrest. Section 970.01(1), STATS. In *State v. Koch,* 175 Wis. 2d 684, 696, 499 N.W.2d 152, 159, *cert. denied*, 510 U.S. —, 114 S. Ct. 221 (1993), the Wisconsin Supreme Court adopted the *Riverside* rule, requiring that a probable cause determination be made within forty-eight hours of arrest.

Martinez, however, was not under arrest. He was in custody on a probation hold. The DOC may take a

---

[6] Martinez contends that the search conducted was an invalid police search as no warrant was provided. We disagree. The search was carried out by DOC probation agents, not by the police. The sheriff's deputies were present in order to secure the residence only and placed Martinez in custody before the search began to prevent any difficulties.

probationer into physical custody to investigate whether the individual has violated the terms of probation. *State v. McKinney,* 168 Wis. 2d 349, 354, 483 N.W.2d 595, 597 (Ct. App. 1992). This is pursuant to WIS. ADM. CODE § DOC 328.22(2). Action under this section does not commence a criminal prosecution. *McKinney*, 168 Wis. 2d at 354-55, 483 N.W.2d at 598. Criminal proceedings against Martinez were not instituted until the complaint was issued. *See id.* at 354, 483 N.W.2d at 598. After the issuance of the complaint, a probable cause determination was held. Once criminal proceedings were instituted, Martinez appeared in court that same day for an initial appearance. There was no *Riverside* violation.

Martinez' next two issues alleging a lack of due process and judicial and prosecutorial misconduct rely on his belief that the State violated its own "state statutory mandated law thereby depriving [itself] of subject matter jurisdiction." Our understanding of Martinez' argument is that since he was not under the supervision of the DOC, the actions of the warrantless search and subsequent probation hold were unlawful and failed to afford him due process. Having concluded that he had consented to the supervision of Wisconsin's DOC, that the warrantless search was lawful and that the probation hold was warranted, the due process argument fails.[7]

---

[7] We also note that Martinez' brief fails to identify which statutory mandates were violated, nor does it develop a legal argument as to how these actions deprived the trial court of subject matter jurisdiction. This court need not consider issues inadequately briefed or unsupported by legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633, 642 (Ct. App. 1992).

234

The final issue Martinez raises is that because of a defect in the arraignment procedure, the trial court lacked authority. The alleged defect occurred when defense counsel was furnished with a copy of the information at the hearing, but the district attorney failed to read the information to the defendant. Section 971.05(3), STATS., provides that the district attorney "shall read the information or complaint to the defendant unless the defendant waives such reading."

An information will not be invalid, nor will proceedings be affected, because of an imperfection in form which does not prejudice the defendant. Section 971.26, STATS. In *Hack v. State,* 141 Wis. 346, 124 N.W. 492 (1910), the supreme court held that a defect in the arraignment procedure is waived by silence, "unless it shall appear that the error complained of has affected the substantial rights of the party." *Id.* at 353, 124 N.W. at 495. "Should Justice travel with leaden heel because the defendant has secretly stored up some technical error not affecting the merits, and thus secured a new trial because forsooth he can waive nothing?" *Id.* at 352, 124 N.W. at 495.

Martinez did not object to the district attorney's failure to read the information, and his brief does not allege any prejudice to him from this defect. In *Bies v. State*, 53 Wis. 2d 322, 325, 193 N.W.2d 46, 48 (1972), a defendant argued that the failure to hold a timely arraignment deprived the court of subject matter jurisdiction. In that case, the supreme court stated that where there was no objection and no showing of prejudice, any right to a more timely arraignment would be waived. *Id.* We conclude that Martinez has

waived this issue based upon his silence and the lack of prejudice.

*By the Court.*—Judgments and order affirmed.