The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

John R. FRYE, Jr., Defendant–Appellant.

No. 97CA1207.

Colorado Court of Appeals, Div. I.

Sept. 16, 1999.

Rehearing Denied Oct. 28, 1999.

Certiorari Denied May 15, 2000.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Miles Madorin, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Haddon, Morgan & Foreman, P.C., Lee D. Foreman, Rachel A. Bellis, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CRISWELL.

Defendant, John R. Frye, Jr., appeals from the orders denying his motion to withdraw his guilty plea and revoking his probation. We affirm the order denying the motion to withdraw his plea, but we reverse the revocation of his probation and remand the cause for further proceedings.

Defendant pled guilty to two counts of securities fraud and one count of conspiracy to commit securities fraud. A plea agreement between defendant and the prosecution provided that defendant would receive a 16–year sentence to the Department of Corrections, which would be suspended on the condition that he complete 25 years of probation.

The plea agreement also required defendant to pay restitution. The total amount of restitution exceeded $5 million, and by later court order, defendant was directed to pay at least $300 per month for a stipulated period. It was apparently concluded that, to pay this total amount of restitution, he would be required to continue to engage in the import-export business, which required foreign travel. Hence, the plea agreement included a stipulation that the prosecution had "no objection to an order authorizing the defendant to leave the State of Colorado and the United States of America during the period of his probation."

The court accepted defendant's plea and sentenced defendant in accordance with its terms. At that time, the court also ordered that defendant "may leave the country upon approval of the probation officer."

Shortly after defendant was sentenced, he moved to Texas, and the Colorado authorities approved of the transfer of his supervision to that state pursuant to the provisions of the Uniform Act for Out–of–State Parolee Supervision (Uniform Act), § 24–60–302, et seq., C.R.S.1999. Before his move, defendant had been supervised by a specifically-designated Colorado probation officer (Colorado officer), and thereafter, he came under the supervision of a Texas probation officer (Texas officer).

After the transfer of supervision to the Texas officer, however, the Colorado officer applied to the court, on an *ex parte* basis, to require defendant to surrender his passport, and the court, without any notice to defendant or an opportunity for him to be heard, granted this request. According to the later testimony of the Texas officer, this had the effect of "ruining" defendant's import-export business and had a marked effect upon his ability to pay the restitution ordered.

Defendant complied with this order, but he filed a motion for return of his passport. He also later filed a motion to withdraw his plea. In apparent response to his first request, the

Colorado officer sought to have defendant's probation revoked, alleging that he had failed to make restitution payments as ordered, had failed to provide requested financial information, and had failed to contact the Colorado officer when defendant had traveled to Colorado.

After hearing evidence with respect to the revocation complaint, the court found that defendant had failed to make restitution payments as ordered and had failed to file the required financial reports. Consequently, the court revoked defendant's probation and initiated the 16-year prison sentence. It also denied his request to withdraw his plea and for the return of his passport.

Defendant appeals from both the order denying his motion to withdraw his plea and the order revoking his probation. He does not directly contest the order denying the return of his passport.

## I.

■ Defendant first contends that he must be allowed to withdraw his plea because the plea agreement called for both a suspended sentence and a sentence to probation—a sentence, he claims, that the court could not legally impose. Hence, citing *Chae v. People,* 780 P.2d 481 (Colo.1989), he argues that, because the sentence that he bargained for in his plea agreement could not legally be imposed by the court, his plea was impermissibly induced, and he must now be allowed to withdraw it. We conclude, however, that the sentence bargained for and imposed was not illegal.

Defendant's claim of illegality is based upon two considerations. First, he notes that § 16-11-101(1), C.R.S.1999, which sets forth various sentencing "alternatives" available to the court, lists both imprisonment and probation as separate sentencing alternatives. This statute, he argues, prevents a court from imposing a sentence that incorporates both alternatives.

Further, he also relies upon § 16-11-206(5), C.R.S.1999, which provides that, if probation is revoked, "the court may *then* impose any sentence ... which might originally have been imposed ...." (emphasis

supplied) He argues that, if a specific sentence to imprisonment has previously been imposed, but its execution has been suspended pursuant to § 18-1-105(10), C.R.S.1999, such earlier action will have deprived the court of the responsibility, placed upon it by § 16-11-206(5), to exercise sentencing discretion at the time that probation is revoked.

We reject both analyses.

As the supreme court described in *People v. Flenniken,* 749 P.2d 395 (Colo.1988), prior to 1971, the statute defining each offense also specified a particular sentence for that offense. In addition, the criminal code at that time did not allow the sentencing court to impose probation as a sentence. Rather, if the court determined that probation was appropriate, it was required first to impose the sentence required for the offense of which the defendant had been convicted, suspend the execution of that sentence, and then admit the defendant to probation.

In 1971 and 1972, however, the criminal code was amended in two respects significant to the issue presented here. First, the court was granted the authority to sentence a defendant directly to probation; the prior imposition of a sentence to imprisonment was no longer necessary. Then, because this requirement was removed, the exercise of the authority to suspend a sentence was also no longer necessary, and the court's authority to suspend a sentence was repealed. *See* Colo. Sess. Laws 1971, ch. 121 at 388, 393; Colo. Sess. Laws 1972, ch. 44 at 190, 239-248. *See also Beecroft v. People,* 874 P.2d 1041 (Colo. 1994).

After these amendments, therefore, any attempt to suspend a sentence would have resulted in the imposition of an illegal sentence. *See Montoya v. People,* 864 P.2d 1093 (Colo.1993); *People v. Flenniken, supra; People v. District Court,* 673 P.2d 991 (Colo. 1983).

However, in 1988, the General Assembly restored the courts' authority to suspend a sentence. Colo. Sess. Laws 1988, ch. 116, § 18-1-105(10) at 681-682. Nevertheless, the courts retained the authority to impose a direct sentence to probation.

Presently, therefore, § 16–11–101(1) describes the various sentencing "alternatives" that a court may choose, subject to the other substantive requirements for sentencing adopted by the criminal code. Among these alternatives are:

— Probation (§ 16–11–101(1)(a), C.R.S. 1999);

— Imprisonment (§ 16–11–101(1)(b), C.R.S. 1999);

— Specialized restitution and community service (§ 16–11–101(1)(b.5), C.R.S. 1999);

— Death (§ 16–11–101(1)(c), C.R.S. 1999);

— A fine, or imprisonment, or both (§ 16–11–101(1)(e), C.R.S. 1999);

— Any sentence required to comply with some other lawful court order (§ 16–11–101(1)(f), C.R.S. 1999); and

— Costs (§ 16–11–101(1)(g), C.R.S. 1999).

Further, under § 17–27–105(1)(b), C.R.S. 1999, a sentencing court also "may impose a sentence to community corrections."

In addition, however, if the court determines that "the ends of justice and the best interest of the public, as well as the defendant" will best be served by such action, § 18–1–105(10), C.R.S.1999, authorizes the court to suspend either the imposition or the execution of any sentence "for such period and upon such terms and conditions" as the court deems best. This statute allows the court to take such action, even if the defendant is not otherwise eligible for probation, upon recommendation of the district attorney.

Defendant argues, however, that a sentencing court may not, as the court did here, impose a sentence of imprisonment, suspend execution of that sentence, and place defendant on probation. This is so, he says, because, under § 16–11–101(1)(a), a court may not sentence a defendant both to imprisonment and to probation.

This argument, however, is based upon the faulty premise that, when a court suspends a sentence of imprisonment conditioned upon a defendant's successful completion of a period of probation, the court's action constitutes a *sentence* to probation.

A similar argument was specifically rejected in *People v. Seals*, 899 P.2d 359 (Colo.App. 1995). There, as here, the court initially imposed a prison sentence, but suspended its execution and placed defendant in community corrections. Community corrections is, of course, a sentencing alternative under § 17–27–105, just as probation is a sentencing alternative under § 16–11–101(1).

In rejecting the assertion that this action resulted in an illegal sentence, the *Seals* court concluded that:

> In authorizing the suspension of sentences, the statute gives a trial court a great deal of discretion to fashion appropriate terms and conditions for the particular case and defendant.
>
> . . . .
>
> The two-year term in community corrections was merely one of the *conditions* of the suspension of the execution of defendant's original sentence and was *not* an imposition of a new *sentence*. (emphasis supplied)

*People v. Seals, supra,* 899 P.2d at 361.

Here, as in *Seals,* when the court originally imposed a 16–year sentence to the Department of Corrections, that sentence became final. The suspension of the *execution* of that sentence did not result in that sentence being withdrawn; it was simply suspended, subject to an express condition. And, just as the condition in *Seals,* that the defendant serve a time in community corrections, did not constitute a new *sentence* to community corrections, the court's requirement here, that defendant serve a period of probation, also was not a new, different, or additional sentence.

Likewise, because defendant was not sentenced to probation, § 16–11–206(5), authorizing the court to impose any sentence that might originally have been imposed if probation is revoked, is inapplicable here. Rather, if the condition to the suspended sentence is violated, the suspension may be vacated, and execution of that sentence can be carried out. In such a circumstance, the pronouncement

of a new sentence would be both unnecessary and improper. *See People v. Seals, supra.*

We conclude, therefore, that the plea agreement here did not call for an illegal sentence, and the court's approval of that agreement was not improper.

## II.

■ Defendant next contends that the court erred by denying his motion to withdraw his plea, based on the court's order to relinquish his passport. He argues that the court, by entering its order requiring him to surrender his passport, without prior notice to him and without allowing him an opportunity to be heard upon the issue, improperly changed the conditions of his probation and the terms of his plea agreement, thereby allowing him to withdraw his plea. We agree that the court improperly directed defendant to surrender his passport. We do not agree, however, that this improper action furnished a basis for a plea withdrawal.

Under the terms of the plea agreement, the prosecution expressly noted that it had no objection to allowing defendant to travel abroad. And, at the time of his sentencing, the court informed defendant that foreign travel would be allowed with the consent of the probation department. Initially, therefore, one of the conditions of defendant's probation was that he could engage in foreign travel with the approval of the Colorado officer.

However, when the Colorado officer sought to prevent defendant from traveling abroad, he did not simply withdraw his approval for such travel and order defendant to surrender his passport. Rather, he applied to the court for an order with respect to the subject.

In response to this request, the court entered its order, titled "Conditions of Probation," which added a condition, reading:

No passport. Passport will be turned in to the Probation Dept.

This order is absolute on its face, so that, after its entry, neither the Colorado officer nor the Texas officer had any authority to approve foreign travel by the defendant. Hence, the court's order had the effect of changing the conditions of defendant's probation.

However, before a court may alter any condition of probation, or impose any new condition, § 16–11–204(4), C.R.S.1999, requires that it provide notice of such proposed change to the defendant and hold a hearing upon that proposed change if the defendant requests one. Here, therefore, because neither the Colorado officer nor the court made any attempt to comply with this statutory commandment, the court's order changing the conditions of defendant's probation, by requiring the surrender of his passport, was improper.

■ We disagree, however, that this caused any change in the terms of the plea agreement.

Under the terms of defendant's plea agreement, the prosecution agreed not to object to an order allowing defendant to leave the country. That agreement, however, did not prevent the court from restricting his right to travel abroad.

Further, at his sentencing hearing, the court specifically informed defendant that his foreign travel would require the approval of the probation department. Defendant made no objection to this condition. Hence, the approval of defendant's probation officer was a condition of his travel under the plea agreement.

■ Defendant further contends, however, that, if the court's permission for him to travel abroad was not an absolute condition of probation, the court was under a duty to explain to him, before accepting his guilty plea, that his probation officer could withdraw approval for such travel. Again, we disagree.

As noted, the plea agreement simply reflected the prosecutor's lack of objection to defendant's foreign travel. In addition, the trial court specifically informed him that such travel was conditioned upon the approval of the probation department. Under the circumstances, the court had no responsibility to inform him of the self-evident fact that the withdrawal of such approval would prohibit such travel.

### III.

■ Defendant finally contends that the undisputed evidence demonstrates that he complied with the only order of restitution entered by the court and that the record does not sustain the court's finding to the contrary. With this contention, we agree.

Section 16–11–204.5(1), C.R.S.1999, provides that the amount of restitution is to be reflective of the "actual pecuniary damages" caused by the offense. That statute also specifically provides that: "The *court* shall fix *the manner and time* of performance." (emphasis supplied)

In addition, § 16–11–204(3), C.R.S.1999, requires that, when a defendant is granted probation, he must be given a "written statement explicitly setting forth the conditions on which he is being released." And, as we have noted, § 16–11–204(4), requires notice and hearing before any of those conditions may be changed.

At the time of defendant's sentencing, it was anticipated that he would attempt to develop the import-export business, the profits from which would then be used to pay restitution. Hence, when the court ordered him to pay a total of $5,122,330.46 in restitution, it specifically directed that:

> Def. to pay a minimum of 300–500 in the initial 6 mos. of the order. Review 9/30/95.

This order was entered on March 31, 1995. During the next six months, defendant paid $2,000, or an average of more than $300 per month. Over the next four months, he paid $1400, or an average of $350 per month. In November of that year, however, the Colorado officer caused defendant's passport to be surrendered, which according to the Texas officer, seriously impacted his source of income. According to this officer, this meant that, thereafter, if defendant "paid any restitution at all, such payments should be seen as a demonstration of a determination to adhere to the spirit of his conditions of probation."

Nevertheless, the court failed to conduct any "review" at the end of September, as called for by its previous order, or at any other time. Hence, at the time of the revocation hearing here, there was no order directing defendant to make any installment payments of restitution in any specific amount, other than for the first six months. And, the evidence is undisputed that defendant complied with that order.

Under these circumstances, therefore, the revocation order, based upon defendant's failure to comply with the court's order to pay restitution cannot be affirmed. *See People v. Dirgo*, 773 P.2d 621 (Colo.App.1989) (where no specific court order of restitution appears of record, revocation of probation based upon defendant's refusal to acknowledge receipt of probation officer's written conditions, including an order to pay restitution as directed by the court, cannot be approved).

We recognize that the court also found, generally, that defendant had failed to produce documents demanded by the Colorado officer. Upon this subject, there was substantial conflict in the evidence, and the court did not specify what documents had been demanded but not produced. Given the record here, therefore, it is virtually impossible for us to determine whether the court's finding upon this subject has evidentiary support without a reference to one or more specific documents. Further, even if the court's finding in this respect has evidentiary support, the record does not convince us that, had a failure to produce certain records been the only dereliction committed by defendant, the court would, nevertheless, have vacated defendant's suspended sentence. On the contrary, under such circumstances, the court might well have chosen to deal with defendant on some basis other than extended incarceration.

Finally, without an identification of the form or forms that defendant failed to remit, it is impossible for us to address defendant's contention that the Colorado officer, as the representative of the sending state under the Uniform Act, had no authority to make demands upon defendant while he was in Texas, the receiving state. *See* § 24–60–303(2), C.R.S.1999 ("[E]ach receiving state will *assume* the duties of visitation of and *supervision over* probationers ... of any sending state and in the exercise of those duties will be governed by the same standards that

prevail for its own probationers ....") (emphasis supplied); Council of State Governments, *Handbook on Interstate Crime Control*, Part II, Probation Rules & Regulations at 11–12 (1966). *See also Kolovrat v. State*, 574 So.2d 294, 296 (Fla.App.1991) ("[I]t was the probation supervisor in Kansas [the receiving state] rather than the [sending state's] probation officer who had authority to directly supervise and instruct defendant while defendant resided in that state."); *Morgan v. State*, 691 N.E.2d 466 (Ind.App. 1998) (sending state may require probationer's return and may then file a petition for revocation). We do note, however, that the agreement governing defendant's transfer to Texas did not contain any special conditions agreed upon by the three parties. *Cf. State v. Kinsella*, 583 N.W.2d 376 (N.D.1998); *State v. Martinez*, 198 Wis.2d 222, 542 N.W.2d 215 (Wis.App.1995).

Upon remand, therefore, the trial court should first consider the extent to which the Colorado officer retained authority to demand production of documents from defendant after defendant's transfer to Texas. If it concludes that the Colorado officer retained some authority in this respect, it should then make specific findings with respect to any specific document that defendant improperly failed to produce. Upon its consideration of these issues and the adoption of such findings, should it find that defendant violated a lawful order, the court should then reconsider whether defendant's probation should be revoked.

The order denying defendant's motion to withdraw his plea is affirmed. The orders vacating the suspended sentence and revoking defendant's probation are reversed, and the cause is remanded to the trial court for further proceedings consistent with the views set forth in this opinion.

Chief Judge HUME and Judge METZGER, concur.