Anna FIERRO, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 07SC788.

Supreme Court of Colorado,
En Banc.

April 27, 2009.

Douglas K. Wilson, Public Defender, Anne Stockham, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, John D. Seidel, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

Fierro petitioned for review of the court of appeals' judgment declaring illegal her three-year sentence to community corrections and remanding for imposition of her previously suspended four-year sentence for robbery. Although the sentencing court had initially placed Fierro on probation, it did so by imposing and suspending a prison term. The court of appeals held that because probation was imposed as a condition of a suspended sentence, the sentencing court did not have the option to resentence her to three years in community corrections upon finding a violation, but was instead required to simply reimpose the four-year sentence it had suspended.

Because section 18–1.3–401(11) of the revised statutes must be understood to permit the suspension of a sentence in conjunction with, rather than in contradistinction to, the imposition of a statutorily-prescribed alternative to imprisonment, the sentencing court's resentencing options upon revocation in this case were dictated by the statutory provisions governing revocation of probation. Because section 16–11–206(5) permits, upon revocation of probation, the imposition of any sentence that might originally have been imposed, the judgment of the court of appeals remanding for imposition of Fierro's suspended sentence is reversed, and the case is remanded for consideration of her remaining issues on appeal.

## I.

Anna Fierro entered guilty pleas to robbery and attempted felony menacing in December 2000. The district court imposed a sentence of four years in the custody of the department of corrections for robbery and a concurrent term of eighteen months for attempted menacing; however, it immediately suspended both prison sentences on the condition that Fierro successfully complete three years of probation.

In July 2003, the district court revoked Fierro's probation and resentenced her to three years in a community corrections program, but while awaiting admission to that program, she walked away from work release by the Jefferson County jail. After returning about a year and a half later and pleading guilty to escape, Fierro was transferred to the custody of the department of corrections for completion of her three-year community corrections sentence, and in addition, she was sentenced to a consecutive term of one year for escape. She appealed the propriety of her department of corrections sentences to the court of appeals.

Rather than addressing the propriety of the sentencing court's decision to transfer Fierro from community corrections to the department of corrections, however, the appellate court found her 2003, three-year sentence to community corrections to have been illegal from its inception. Because she had been sentenced to probation following the suspension of a prison term, the court of appeals reasoned that upon revocation, the sentencing court was required to execute the previously suspended sentence. Although it affirmed Fierro's consecutive one-year sentence for escape, it therefore remanded for imposition of her concurrent four-year and eighteen-month sentences to the department of corrections for her convictions of robbery and attempted felony menacing.

We granted Fierro's petition for a writ of certiorari, solely to consider whether the court of appeals erred in remanding for imposition of her original prison sentence.

## II.

■ Subject to constitutional limitations not at issue here, it is the prerogative of the legislature to define crimes and prescribe punishments. *Shipley v. People*, 45 P.3d 1277, 1278 (Colo.2002). In determining available sentencing alternatives, it is therefore the legislature's intent, as expressed in its statutes, with which we must be concerned. *Id.* If legislative intent is not clear from the language of a statute alone, various intrinsic and extrinsic aids may help resolve any ambiguity in that language. *See Frank M. Hall & Co. v. Newsom*, 125 P.3d 444, 451 (Colo. 2005). Particularly, when a statute is a component part of a comprehensive regulatory scheme, like the complex of sentencing prescriptions in this jurisdiction, the entire scheme should be construed to give consistent, harmonious, and sensible effect to all of its parts. *Shipley*, 45 P.3d at 1278; *see also Left Hand Ditch Co. v. Hill*, 933 P.2d 1, 3 (Colo.1997); *Walgreen, Co. v. Charnes*, 819 P.2d 1039, 1043 (Colo.1991).

In 1988, the General Assembly re-enacted, almost verbatim, a provision of the pre-Criminal Code and pre-Criminal Procedure Code probation scheme permitting a sentencing court to suspend a prison sentence under specified circumstances. *See* ch. 116, sec. 5, § 18–1–105(10), 1988 Colo. Sess. Laws 679, 682 [1]; *see also* § 39–16–6, C.R.S. (1963). It

---

**1.** The full text of section 18–1–105(10) as enacted    in 1988 was:

situated this revived provision in a section of the Criminal Code classifying felonies and providing for the ranges of fines and terms of imprisonment authorized upon conviction. *See* § 18–1–105, C.R.S. (1988) (Felonies Classified—presumptive penalties). The new subsection made no reference, however, to the more general provisions of the sentencing scheme delineating available sentencing alternatives. *See* Title 16, Article 11 (Imposition of Sentence).

This newly-revived authorization to suspend a sentence continued to be couched in terms virtually identical to those permitting a sentence to probation,[2] but otherwise failed to elaborate on the scope or nature of the power. It contained no express limitation on the sentencing court's discretion in granting or imposing conditions for continued suspension; it contained no required findings or process for vacating or terminating a suspension for violation of its conditions; and it contained no suggestion of sentencing options available upon vacating a suspended sentence. The bare bones (if not positively cryptic) nature of the provision has since spawned some two decades of litigation and legislative clarifications.

Although no meaningful legislative history of the provision appears to exist, it was almost certainly attached to other 1988 sentencing amendments in response to several actions taken by this court. In 1983, we declared illegal a felony sentence in which the sentencing court expressly rejected probation in favor of a prison sentence, only to suspend that sentence and order the defendant placed in a work-release program of the Denver County jail, a sentencing alternative statutorily available only as a condition of probation. *See People v. Dist. Court,* 673 P.2d 991 (Colo.1983). In holding that such a sentence amounted to an impermissible mix of incarceration and probation, we noted that statutory authority to suspend a sentence

existed prior to 1972 as a means of imposing probation, but that this power had become unnecessary and was therefore eliminated when probation became a sentencing alternative unto itself. *Id.*

Three years later, however, we rejected an invitation to limit that holding to attempts by sentencing courts to circumvent legislative sentencing mandates. *See People v. Flenniken,* 749 P.2d 395 (Colo.1988). In *Flenniken,* in addition to holding that probation is a distinct and separate sentencing alternative, unlimited by the terms of imprisonment prescribed generally for felony convictions, we found an otherwise valid sentence of probation to be illegal and void ab initio, permitting resentencing, for the reason that the court first announced that it was suspending a sentence of imprisonment. In doing so, we necessarily rejected any interpretation of our holding in *District Court* as applying solely to using the device of suspension to circumvent statutory sentencing prescriptions, finding instead that it was premised on the absence of any statutory authority permitting a court to suspend the execution of a sentence. We therefore effectively held that suspending a specifically articulated prison sentence, even as a precondition of imposing an otherwise valid sentence of probation, was enough to render the entire sentence illegal.

Our holding in *Flenniken* became final in February 1988, and by May the legislature had enacted section 18–1–105(10). *See* 1988 Colo. Sess. Laws 679, 682 (Approved May 29, 1988). Without explanation or any other overt attempt to integrate it into the existing sentencing scheme, the legislature simply re-enacted the old formula for granting probation. Courts were therefore left with the question whether restoring this authority was intended merely to re-supply sentencing courts with the missing statutory authority to suspend a prison sentence in the course of imposing probation; or whether the legisla-

---

When it shall appear to the satisfaction of the court that the ends of justice and the best interest of the public, as well as the defendant, will be best served thereby, the court shall have the power to suspend the imposition or execution of sentence for such period and upon such terms and conditions as it may deem best.

2. The text of the enabling statute for probation reads:

When it appears to the satisfaction of the court that the ends of justice and the best interest of the public, as well as the defendant, will be served thereby, the court may grant the defendant probation for such period and upon such terms and conditions as it deems best.

ture actually intended to grant judges the discretion to depart from its elaborate network of facially mandatory sentencing prescriptions whenever they considered it to be in the best interests of justice, the defendant, and public to do so.

Almost immediately ensued a series of statutory amendments, sometimes in response to the prospect of hybrid sentences, making increasingly clear the intended relationship between suspension of a prison sentence and probation. In 1991, the General Assembly amended subsection (10) by expressly barring suspension of a sentence for any defendant whose prior criminal history would exclude him from a sentence of probation. *See* ch. 73, sec. 6, § 18–1–105(10), 1991 Colo. Sess. Laws 402, 404–05. One year earlier, it had permitted a waiver of the so-called two-felony rule,[3] allowing courts to grant probation to otherwise ineligible defendants upon recommendation by the prosecutor. *See* ch. 120, sec. 7, § 16–11–201(4), 1990 Colo. Sess. Laws 939, 941. The 1991 amendment made clear that the two-felony rule applied with equal force to the suspension of a sentence but that it could be waived under precisely the same circumstances and in precisely the same manner as required to grant probation.

Unfortunately, this court inadvertently obscured the effect of the 1991 amendment, in a case addressing a different question altogether and concerning an offense to which the amendment admittedly did not even apply. *See Beecroft v. People*, 874 P.2d 1041, 1048 (Colo.1994). In the course of explaining why drug treatment imposed as a condition of a suspended sentence did not amount to "confinement" for purposes of calculating "time served," we looked to this recently enacted waiver provision for peripheral support. Largely because it was couched in terms of a waiver on behalf of defendants who were ineligible for probation, we failed to appreciate that it was borrowed verbatim from and applied identically to probation. We therefore mischaracterized the amendment as evidence "that the General Assembly had created a mechanism for courts to impose an intermediate sanction" on defendants who were *not* eligible for probation, rather than understanding that it actually limited both suspension and probation to precisely the same class of defendants. *Id.*

In 1993, during the pendency of an appeal questioning whether subsection (10) permitted the reduction or suspension of even a sentence statutorily mandated by the defendant's status as a probationer, *see People v. Munoz*, 857 P.2d 546 (Colo.App. 1993), the General Assembly again amended the statute, by specifying that the power of suspension would not extend to any sentence required by a "mandatory sentencing provision." *See* ch. 292, sec. 12, § 18–1–105(10), 1993 Colo. Sess. Laws 1725, 1730–31. Although some legislative history suggested that this amendment was designed to prevent suspension whenever a prison sentence was expressly mandated by statute, *Substantive Omnibus Criminal Bill: Hearing on H.B. 1088 Before the H. Comm. on the Judiciary*, 59th Gen. Assemb. (1993) (Testimony of Executive Director of Colo. District Attorney Council), its scope remained a matter of debate for another decade. In 2003, in direct response to yet another decision of this court, this time noting the lack of uniformity and the consequent ambiguity of many of its sentencing provisions, *see Shipley*, 45 P.3d at 1278–79, the General Assembly responded with a number of statutory changes, including the addition of language to subsection (10) making clear that courts lack the power to suspend any statutorily mandated sentence to incarceration, whether that be in the custody of the department of corrections, community corrections, or jail. Ch. 199, sec. 13, § 18–1–105, 2003 Colo. Sess. Laws 1429.

Over this period, the task of fleshing out the boundaries of the suspension power has fallen largely to the intermediate appellate court. From little more than general due

---

3. The two-felony rule, found in section 18–1.3–201(2)(a), C.R.S. (2008), is a restriction on probation for repeat felony offenders, which reads: "A person who has been twice convicted of a felony under the laws of this state, any other state, or the United States prior to the conviction on which his or her application is based shall not be eligible for probation." *Cf. Chism v. People*, 80 P.3d 293 (Colo.2003).

process principles and construction aids designed to resolve statutory conflicts and avoid absurdity, it has judicially developed a parallel body of sentencing law to govern the imposition and revocation of "suspended sentences," as well as the consequences of violating conditions upon which a suspension is predicated. Shortly after its revival, for example, the court of appeals held that despite locating the power to suspend in a statute limited to felony sentences, the legislature could not reasonably have intended to limit that power to felony sentences. *People v. Schwartz*, 823 P.2d 1386 (Colo.App.1991).

Given its facially unlimited scope, the court of appeals also embarked on a series of narrowing constructions, finding implicit limitations on the power to suspend sentences where the legislature had already imposed greater than normal restrictions on sentencing ranges. *See, e.g., People v. Delgado*, 832 P.2d 971 (Colo.App.1991) (finding bar to suspending a portion of mandatory drug sentences); *see also People v. Munoz*, 857 P.2d 546 (Colo.App.1993) (barring suspension of sentences to incarceration mandated for defendants already on probation, pursuant to § 18–1–105(9)(a)(III) ); *People v. Nastiuk*, 914 P.2d 421 (Colo.App.1995) (same for defendants already on parole, pursuant to § 18–1–105(9)(a)(II) ); *People v. Hummel*, 131 P.3d 1204 (Colo.App.2006) (finding a suspended sentence to be a "sentence to incarceration" within meaning of subsection (9)(a), requiring a prison sentence to at least the mid-point of the presumptive range). In addition, in the absence of any statutory reference to vacating or revoking a suspension, the appellate court found a hearing and other procedural protections to be constitutionally required. *See People v. Scura*, 72 P.3d 431, 433–34 (Colo.App.2003).

Of perhaps greatest relevance to the question before us today, however, the court of appeals has reasoned that suspension of the *execution* of a sentence does not result in the withdrawal or replacement of that sentence, and therefore upon the termination or revocation of the suspension of execution, a new sentence is neither necessary nor proper. *See People v. Frye*, 997 P.2d 1223, 1226–27 (Colo.App.1999) (relying on *People v. Seals*,

899 P.2d 359 (Colo.App.1995), for the proposition that suspension of execution simply serves as a postponement of originally imposed sentence). Rather, it has held that upon finding the violation of a condition, on the basis of which the execution of a sentence was suspended, the sentencing court must simply reinstate the original sentence. *Frye*, 997 P.2d at 1226.

On its face, the term "suspend" is hardly unambiguous. *See Sigala v. Atencio's Mkt.*, 184 P.3d 40, 43 (Colo.2008) (acknowledging that the term may mean either "to stop temporarily" or "to bar or exclude as a penalty"). In fact, the statutory scheme from which the "power to suspend the imposition or execution of sentence" was taken expressly permitted re-sentencing, upon a violation, to any originally available sentence. In light of the history of this precise language, *see* §§ 39–16–6 and –9, it is at least doubtful that *Frye's* distinction between "imposition" and "execution" was ever intended; but more importantly, subsequent statutory developments persuasively indicate that re-enacting the power to suspend a sentence did not create a separate sentencing alternative at all.

The legislature's re-authorization of the power to suspend sentences in 1988 was accomplished by re-enacting virtually verbatim a portion of the former procedure for imposing a sentence of probation in lieu of imprisonment. Suspension at that time in no way provided a distinct sentencing option but was permitted only in conjunction with, and as a step in the process of, substituting probation for imprisonment. By limiting the power of suspension to defendants who are not made ineligible for probation, either by their criminal records or the nature of their current convictions, the subsequent amendments to subsection (10) (currently designated section 18–1.3–401(11) ) strongly suggest a similar legislative purpose. Especially in light of these later clarifications, it is far more reasonable to understand the 1988 re-enactment of the power to suspend as providing the statutory authorization for its continued usage (without simultaneously rendering illegal and void an otherwise valid grant of probation) than it would be to presume from the

legislature's initial oblique reference to suspension an intention to render optional all (or even some unspecified portion) of its ostensibly mandatory sentencing scheme.

■ Limited to defendants and convictions for which probation is a permissible alternative, as is now expressly the case, little purpose could be served by construing suspension as a sentencing alternative separate and distinct from probation. It would be quite extraordinary to infer from these few words an intent to extend to individual sentencing courts, at their choice, the power to relieve defendants of otherwise mandatory conditions of probation, like the payment of restitution to their victims. Similarly, it is difficult to find anywhere in this language a legislative intent to permit sentencing courts on their own initiative, or defendants and prosecutors through plea negotiations, to limit the court's obligation to fairly consider all available sentencing options, at the time of a violation of conditions of probation. *See* § 16–11–206(5), C.R.S. (2008).

The psychological impact of warning a defendant what the sentencing court considers to be an appropriate prison term, should he violate his probation, remains a significant reason for permitting the imposition and suspension of prison sentences. Nothing in the word "suspend," in and of itself, however, implies the power to abdicate or bargain away the court's sentencing responsibilities or to demand of a criminal defendant that he agree to be bound by a particular sentence in advance of the conditions mandating exercise of the court's resentencing discretion. *Cf. People v. Wright,* 194 Colo. 448, 573 P.2d 551 (1978) (making clear that court cannot be bound by sentence concession or recommendation). Properly understood, the power to suspend a sentence was re-enacted for the specific purpose of permitting it to function in conjunction with a statutorily authorized sentence of probation. Ironically, rather than re-authorizing courts to rely on suspension for purposes exclusive of circumventing legislative sentencing dictates, the statute has for some time been construed as an express grant of the power to deviate from legislative sentencing dictates.

It is therefore inconsequential whether conditions of probation are imposed alone or in conjunction with suspending either the imposition or execution of a sentence to a term of years. Nor is it consequential whether the sentencing court refers to the conditions of its sentence as conditions of probation or conditions of a suspended sentence, or both. The effect of section 18–1.3–401(11) is to permit sentencing courts to notify defendants of the sentence that would be imposed but for the alternative of probation and to which the defendant remains subject in the event of a violation of probationary conditions, without simultaneously rendering the sentence illegal and void. It does not, however, permit sentencing courts to ignore other legislative sentencing mandates with impunity.

Because the power to suspend a sentence complements, rather than supplants, a sentence to probation; and because any requirements upon which the suspension of a sentence is conditioned must conform to the statutory requirements of and for probation; both revocation for violation of probationary conditions and resentencing upon such revocation are governed by the statutory provisions governing revocation of probation. *See* § 16–11–206(5), C.R.S. (2008).

## III.

Following the defendant's guilty plea in this case, entered without any sentence concessions, the district court imposed and suspended concurrent four-year and eighteen-month sentences to the department of corrections and granted an uncontested three-year sentence of probation. Upon revocation of that probationary sentence, the court was statutorily authorized to impose any sentence or grant any probation that might originally have been imposed or granted, regardless of the fact that probation was imposed as a condition of suspending a specific sentence of imprisonment. *Id.* The sentencing court's subsequent three-year sentence to a community corrections facility was therefore not made illegal by its original imposition and suspension of a four-year sentence.

## IV.

Because section 18–1.3–401(11), C.R.S. (2008), must be understood to permit the suspension of a sentence in conjunction with, rather than in contradistinction to, a grant of probation, the sentencing court's resentencing options upon revocation were dictated by the statutory provisions governing revocation of probation. Because section 16–11–206(5) permits, upon revocation of probation, the imposition of any sentence that might originally have been imposed, the judgment of the court of appeals remanding for imposition of Fierro's suspended sentence is reversed, and the case is remanded for consideration of her remaining issues on appeal.

Justice EID, concurring in the judgment.

I agree with the majority that the probation provision and the suspension provision work in tandem. Unlike the majority, however, I see no tension between those two provisions as they apply to the issue before us today: namely, whether the sentencing court is bound to impose or execute a suspended sentence once the defendant has violated a condition of the suspension. In my view, under both the suspension and probation provisions, the district court judge is not bound by the suspended sentence, and instead has the authority at resentencing to impose any sentence that could have been imposed originally. I therefore concur only in the majority's judgment.

The suspension provision provides that:

When it shall appear to the satisfaction of the court that the ends of justice and the best interest of the public, as well as the defendant, will be best served thereby, the court *shall have the power to suspend the imposition or execution of sentence for such period and upon such terms and conditions as it may deem best . . . .*

§ 18–1.3–401(11), C.R.S. (2008) (emphasis added). The court of appeals found, and I agree, that if the defendant violates the "terms and conditions" of the suspended sentence, the sentence is no longer "suspended" and is instead "imposed" or "executed." Contrary to the majority, then, maj. op. at 464, I believe the term "suspend" is unambiguous, as it connotes a temporary stoppage with resumption at some later date. *See Sigala v. Atencio's Market,* 184 P.3d 40, 47 (Colo.2008) (Eid, J., dissenting).[4] Here, the defendant's sentence was temporarily held in abeyance while she complied with the conditions of the suspension. Once it was determined that she had violated those conditions, the sentence was revived.

The court of appeals was wrong in my view, however, to find that the revived sentence was binding on the district court. Under the suspension provision, the district court has the authority to suspend the sentence once again and to resentence the defendant to any sentence that it could have imposed originally. And that is precisely what occurred in this case: the district court resuspended the defendant's four-year and eighteen-month DOC sentences, and sentenced the defendant to three years in community corrections. Maj. op. at 465.

This is the same result that occurs under the probation provision, which provides that, once probation is revoked, "the court may then impose any sentence . . . which might originally have been imposed." § 16–11–206(5), C.R.S. (2008). Thus, in my view, it does not matter whether the original sentence in this case is characterized as a sentence suspended on a condition of probation, or as a sentence to probation combined with a "notif[ication] . . . of the sentence that would [have been] imposed but for the alternative of probation." Maj. op. at 465. The court had the same options available to it on resentencing either way—that is, to resentence the defendant to any sentence it could have initially imposed.

---

4. Both the majority and dissenting opinions in *Sigala* agreed that payment of workers' compensation benefits that had been suspended would resume once the suspension was lifted—the analogous question in this case. 184 P.3d at 46; *id.* at 47 (Eid, J., dissenting). The disagreement between the majority and dissenting opinions centered on an issue not presented in this case— that is, whether benefits accrued during a period of suspension to be payable once the suspension lifted. *Id.* at 46 (holding that the payments accrued); *id.* at 47 (Eid, J., dissenting) (finding no accrual).

As the majority notes in passing, the suspension authority and the probation provision appeared in the same statute, entitled "Probation," prior to 1972. maj. op. at 462; *see also* § 39–16–6(1) and § 39–16–9(2), C.R.S. (1963). The language of both provisions was consistent on the issue before us then, and is consistent now—despite the fact that the language today appears in two different statutes. Because the issue raised in this case can be resolved on this ground alone, I concur only in the judgment of the majority.